# Supreme Court of Louisiana

The Opinions handed down on the **13th day of December, 2024** are as follows:

**PER CURIAM:**

2024-B-00479      IN RE: TRINA TRINHTHI CHU

DISBARMENT IMPOSED. SEE PER CURIAM.

Retired Judge Paul A. Bonin, assigned as Justice ad hoc, sitting for McCallum, J., recused.

Weimer, C.J., concurs in part, dissents in part and assigns reasons.

Hughes, J., concurs in part, dissents in part for the reasons assigned by Chief Justice Weimer.

Griffin, J., concurs in part, dissents in part for the reasons assigned by Chief Justice Weimer.

# SUPREME COURT OF LOUISIANA

## NO. 2024-B-0479

## IN RE: TRINA TRINHTHI CHU

## ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM[*]

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Trina Trinhthi Chu, an attorney licensed to practice law in Louisiana, but currently on interim suspension for threat of harm to the public. *In re: Chu*, 20-1012 (La. 10/7/20), 302 So. 3d 1102.

## UNDERLYING FACTS

From February 1, 2018 to August 16, 2018, respondent was employed by the Louisiana Court of Appeal, Second Circuit ("Second Circuit") as a law clerk for Judge Henry N. Brown, Jr.[1] During that period, the *Succession of Fred Langford Houston* case was pending before the Second Circuit both on an application for supervisory writs and on appeal. Respondent was aware that Judge Brown was recused in *Succession of Houston* due to his relationship with Ms. Hanh Williams, one of the litigants in the case.[2] In addition, respondent herself was a long time, close friend of Ms. Williams as well as Ms. Williams' former attorney.

---

[*] Justice Jeannette Theriot Knoll, retired, appointed Justice *Pro Tempore*, sitting for the vacancy in Louisiana Supreme Court District 3; retired Judge Paul A. Bonin, assigned as Justice Ad Hoc, sitting for McCallum, J., recused.

[1] Judge Brown retired from the bench in October 2018.

[2] *Succession of Houston* involved allegations that Hanh Williams breached her fiduciary duty as the trustee and executrix of Mr. Houston's trust and estate. In November 2016, a jury in Caddo Parish found Ms. Williams liable for $1.5 million in damages.

While employed as Judge Brown's law clerk, respondent collected confidential court documents pertaining to the *Succession of Houston* case and emailed this information to her personal email address, to Ms. Williams, and to others. These documents included the pre-argument memorandum, the opinion distribution sheet, and the civil issue sheet. Respondent also saved confidential court documents to a personal flash drive, which was never recovered. Respondent conducted legal research and drafted pleadings, memoranda, and correspondence that were intended to be filed on behalf of Ms. Williams with the Second Circuit under the signature of another attorney. Respondent used court resources to perform this work, including a court-provided computer, copy machine, and Westlaw subscription.

In October 2020, a bill of information was filed in Caddo Parish charging respondent with three counts of malfeasance in office, in violation of La. R.S. 14:134A(2), and one count of offenses against intellectual property, in violation of La. R.S. 14:73.2A(2).[3] In October 2022, respondent pleaded *nolo contendere* to a single misdemeanor violation of La. R.S. 14:73.2A(2).[4]

---

[3] La. R.S. 14:73.2 provides in pertinent part as follows:

> A. An offense against intellectual property is the intentional:
>
> (1) Destruction, insertion, or modification, without consent, of intellectual property; or
>
> (2) Disclosure, use, copying, taking, or accessing, without consent, of intellectual property.
>
> B. (1) Whoever commits an offense against intellectual property shall be fined not more than five hundred dollars, or imprisoned for not more than six months, or both, for commission of the offense.
>
> (2) However, when the damage or loss amounts to a value of five hundred dollars or more, the offender may be fined not more than ten thousand dollars, or imprisoned with or without hard labor, for not more than five years, or both.

[4] A plea of *nolo contendere* is tantamount to an admission of guilt and, for purposes of disciplinary proceedings, equivalent to a plea of guilty. *Louisiana State Bar Ass'n v. O'Halloran*, 412 So. 2d 523 (La. 1982).

2

**DISCIPLINARY PROCEEDINGS**

On August 17, 2018, the ODC received a complaint against respondent from the Second Circuit judges, clerk of court/judicial administrator, and administrative general counsel. In November 2020, the ODC filed formal charges against respondent, alleging that her conduct violated the following provisions of the Rules of Professional Conduct: Rules 3.5(a) (a lawyer shall not seek to influence a judge, juror, prospective juror, or other official by means prohibited by law), 3.5(b) (a lawyer shall not communicate ex parte with such a person during the proceeding unless authorized to do so by law or court order), 3.5(d) (a lawyer shall not engage in conduct intended to disrupt a tribunal), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (engaging in conduct prejudicial to the administration of justice), and 8.4(e) (stating or implying an ability to influence improperly a judge, judicial officer, governmental agency, or official or to achieve results by means that violate the Rules of Professional Conduct or other law). Respondent answered the formal charges and denied any misconduct.

In December 2020, respondent filed a motion to stay this proceeding pursuant to Supreme Court Rule XIX, § 18(G).[5] The disciplinary board granted the motion, which was not opposed by the ODC. The stay remained in effect until January 2023, when the matter was set for hearing pursuant to an unopposed motion filed by the ODC.

---

[5] Supreme Court Rule XIX, § 18(G) provides that a disciplinary matter may be stayed "because of substantial similarity to the material allegations of pending criminal or civil litigation…"

*Formal Hearing*

The hearing committee conducted the formal hearing on June 9, 2023. Both respondent and the ODC introduced documentary evidence. Respondent testified on her own behalf and on cross-examination by the ODC. Respondent also called fact and character witnesses to testify.

*Hearing Committee Report*

After considering the evidence and testimony presented at the hearing, the hearing committee summarized the testimony as follows:

<u>Respondent</u> – The ODC called respondent on cross-examination. Respondent acknowledged her employment as Judge Brown's law clerk at the Second Circuit from February to August of 2018. She acknowledged her arrest and *nolo contendere* plea to a violation of La R.S. 14:73.2 and her interim suspension.

On direct examination, respondent testified that she ran for judge in 2014, 2016, and 2020. She met Hanh Williams around 2005.

She testified that no one told her she could not look into computer drives or copy court transcripts. She testified that she did not send any confidential information to Ms. Williams before oral argument.

She discussed the chronology post-termination of her running for judge, her arrest, and public humiliation. She testified that her *nolo contendere* plea was made for convenience.

Respondent indicated she understood the harm created by the appearance of impropriety. Respondent said that at that time she truly believed that what she transmitted was public information.

She also testified about her pro bono work and work as an interpreter. She stated that she sent the information to Ms. Williams to prove to her she knew the

facts of the case, and that she was giving her friend a "second opinion," comparing it to the second opinion a doctor gives.

Judge Brown – Judge Brown testified that he hired respondent and was the judge she worked with directly at the Second Circuit before his retirement as Chief Judge. Judge Brown hired respondent as a law clerk because he was impressed with her credentials and to help her build her resume.

Judge Brown related his memory of the events surrounding the discovery that respondent had accessed confidential information and the circumstances surrounding her firing or resignation.[6] Judge Brown testified that he did not discuss the *Succession of Houston* case with respondent because he was recused, and he felt that she was not in any position to influence any other judges on the court on that case. He was not familiar with exactly what information respondent was accused of taking.

On cross-examination, Judge Brown agreed with the ODC that the pre-argument memorandum and distribution sheet are not publicly available or sent to the public, or to lawyers/parties to the case. Judge Brown also explained the circumstances which led to him feeling coerced into signing the disciplinary complaint against respondent.

Sergeant Doug Smith – Sergeant Smith is a 21-year veteran of the Caddo Parish Sheriff's Office. He investigated the underlying criminal complaint against respondent. He administratively closed the case in June 2019, but months later his superiors reviewed the file, and the case was reopened, resulting in charges. This was an unusual chain of events. Sergeant Smith testified that the forensic examination of respondent's computer showed emails transmitting information from respondent to Hanh Williams. This information included the distribution sheet, pre-

---

[6] Some of the evidence introduced by respondent concerned whether she was fired or resigned. The committee indicated that it did "not need to make any finding on this issue for our purposes."

argument memorandum, research, and drafts of pleadings related to the pending *Succession of Houston* case. The committee characterized Sergeant Smith as a credible witness.

Dr. Gazi Zibari – Dr. Zibari, a professor of surgery at LSU Medical School, met respondent through her husband, who is also a doctor. He testified to respondent's character and "big heart," citing her work with indigent clients and immigrants. The committee characterized Dr. Zibari as a credible witness.

Hal Odom – Mr. Odom is a senior research attorney at the Second Circuit. He testified that prior to the incident involving respondent, there was no actual policy that prohibited law clerks from looking at shared folders on the court's network. The committee characterized Mr. Odom as a credible witness.

MeGail Parsons – Ms. Parsons, an administrative assistant in the Department of Psychiatry and Behavioral Health at LSU Health Sciences Center Shreveport, has known respondent for about ten years. She testified that respondent is honest and caring and is the most compassionate person she has ever met. Ms. Parsons was not familiar with respondent's conviction but stated that despite seeing corruption in various elected officials, she could not envision in our judicial system a situation where the court was helping one party win against the other. The committee characterized Ms. Parsons as a credible witness.

Roshell Francis-Jones – Ms. Francis-Jones, a public defender in the 16th Judicial District, became friends with respondent while working for Legal Aid in Shreveport twenty years ago. Ms. Francis-Jones is not aware of any details of this matter, but she attested to respondent's character and volunteer work. She also testified that some in the Caddo Parish District Attorney's Office have personal and/or political animosity towards respondent. The committee characterized Ms. Francis-Jones as a credible witness.

The committee made the following factual findings:

On February 1, 2018, respondent was hired as a law clerk for Judge Brown. She signed an Acknowledgment of Second Circuit Personnel Policies and Procedures and an Acknowledgment of Receipt of the Policy and Procedures for Use of Computer & Electronic Communications and Social Media Policy.

Respondent was informed Judge Brown was recused from Hanh Williams' cases. Respondent, as a licensed attorney and former candidate for judge, should have known and had a basic understanding of conflicts and recusal.

The *Succession of Houston* case involved a close friend (Hanh Williams) of both Judge Brown and respondent. Respondent knew that Judge Brown was recused from this matter (and associated matters) and that this recusal also applied to her.

Respondent knowingly and intentionally collected court information, including items which were undisputedly confidential (pre-argument memorandum, opinion distribution sheet, civil issue sheet) and transmitted same to her friend, while at the same time she was doing legal work for the litigant.

As a result of the discovery of this situation, all the Second Circuit judges recused themselves and the matters had to be transferred to another circuit for conclusion.

On October 24, 2022, respondent entered a *nolo contendere* plea to a charge that between the dates of February 1, 2018 and August 16, 2018, she did intentionally disclose, use, copy, take, or access, without consent, intellectual property defined in La. R.S. 14:73.1(10).

Based on these facts, the committee found that respondent violated Rules 3.5(b), 8.4(a), 8.4(b), 8.4(c), and 8.4(d) of the Rules of Professional Conduct. The committee found no violation of Rules 3.5(a), 3.5(d), or 8.4(e).

The committee determined respondent violated duties owed to the legal system and the legal profession. She acted intentionally. Her misconduct caused actual harm, requiring the transfer of the *Succession of Houston* case to another

appellate court, inconveniencing parties and counsel, initiating investigative resources, and undermining confidence in the justice system. Based on the ABA's *Standards for Imposing Lawyer Sanctions*, the committee determined the baseline sanction is disbarment.

The committee determined the following aggravating factors are present: a dishonest motive, substantial experience in the practice of law (admitted 2003), and illegal conduct. The committee found in mitigation the absence of a prior disciplinary record and the absence of a selfish motive.[7] The committee rejected respondent's argument that the "political context" of this matter should be considered in mitigation.[8]

Based on these findings, the committee recommended respondent be disbarred.

Both respondent and the ODC filed objections to the hearing committee's report.

*Disciplinary Board Recommendation*

After review, the disciplinary board determined that the hearing committee's factual findings are not manifestly erroneous and adopted same, with minor clarifications. The board also made its own findings of fact. Based on these facts, the board found that respondent violated Rules 3.5(a), 3.5(d), 8.4(a), 8.4(b), 8.4(c),

---

[7] The committee felt that respondent's only motive was to help her friend, notwithstanding the significant amount of money involved in the *Succession of Houston* case.

[8] The committee stated:

> The evidence tends to indicate that had Respondent not filed to run for Judge after her termination, the criminal matter would have likely faded away quietly. But for the further investigation of the criminal matter, some of the presented evidence may not have developed in the disciplinary matter as it did. Be that as it may, the Committee does not consider this a mitigating circumstance. The underlying prohibited conduct still occurred in violation of the rules. This conduct occurred prior to any politics in the prosecution of the criminal matter.

and 8.4(d) of the Rules of Professional Conduct. The board found no violation of Rules 3.5(b) or 8.4(e).

The board determined respondent violated duties owed to the public, the legal system, and the legal profession. Respondent acted intentionally, and her conduct caused great actual harm. Based on the ABA's *Standards for Imposing Lawyer Sanctions*, the board determined the baseline sanction is disbarment.

The board determined that the following aggravating factors are present: a dishonest or selfish motive, submission of false evidence, false statements, or other deceptive practices during the disciplinary process, refusal to acknowledge the wrongful nature of the conduct, substantial experience in the practice of law, and illegal conduct. The board determined that the sole mitigating factor present is the absence of a prior disciplinary record.

Turning to the issue of an appropriate sanction, a majority of the board found that respondent's misconduct warrants permanent disbarment. Respondent stands convicted of a violation of La. R.S. 14:73.2A(2). Her conduct, by statutory definition, involves the intentional "disclosure, use, copying, taking, or accessing, without consent, of intellectual property" of the Second Circuit judges and staff. Her intentional misconduct is, at best, a complete disregard for the judicial process, and, at worst, an orchestrated scheme to undermine the judicial process. Such conduct is a ground for permanent disbarment under Supreme Court Rule XIX, Appendix D, Guideline 2. In addition, respondent's egregious misconduct demonstrates a convincing lack of ethical and moral fitness to practice law.

Based on this reasoning, a majority of the board recommended respondent be permanently disbarred. Two board members dissented and would recommend ordinary disbarment. The board further recommended that respondent be assessed with the costs and expenses of this matter.

9

Respondent filed an objection to the board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

**DISCUSSION**

Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. *In re: Banks*, 09-1212 (La. 10/2/09), 18 So. 3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. *See In re: Caulfield*, 96-1401 (La. 11/25/96), 683 So. 2d 714; *In re: Pardue*, 93-2865 (La. 3/11/94), 633 So. 2d 150.

Although the record in this case is voluminous, the basic facts are largely undisputed. Respondent intentionally disclosed confidential court documents to a litigant. She also conducted legal research and drafted pleadings and memoranda for the litigant, all while the judge she worked for was recused from the case. As a result of these actions, respondent was criminally charged with three counts of malfeasance in office and one count of offenses against intellectual property. Pursuant to a plea agreement, she ultimately entered a *nolo contendere* plea to one count of misdemeanor offense against intellectual property. The initial question presented is whether these actions violated the Rules of Professional Conduct.

*Analysis of the Rule Violations*

In its formal charges, the ODC alleged respondent violated subsections (a), (b) and (d) of Rule 3.5 of the Rules of Professional Conduct, which provides:

A lawyer shall not:

(a) seek to influence a judge, juror, prospective juror or other official by means prohibited by law;

(b) communicate ex parte with such a person during the proceeding unless authorized to do so by law or court order;

\* \* \*

(d) engage in conduct intended to disrupt a tribunal.

The hearing committee found respondent violated Rule 3.5(b) but found no violation of Rules 3.5(a) or 3.5(d). Conversely, the board found that respondent violated Rules 3.5(a) and 3.5(d) but found no violation of Rule 3.5(b).

In its report, the committee relied on Rule 3.5(b), which provides a lawyer shall not "communicate ex parte with such a person during the proceeding unless authorized to do so by law or court order." However, as the board pointed out, the phrase "such a person" as used in Rule 3.5(b) refers to the list of persons enumerated in Rule 3.5(a), which consists of judges, jurors, prospective jurors or other officials. Ms. Williams, the person with whom respondent engaged in ex parte communications, was a litigant and therefore did not fall within any of these classes.

The board instead found a violation of Rule 3.5(a), which provides a lawyer shall not "seek to influence a judge, juror, prospective juror or other official by means prohibited by law." The board suggested respondent intended to "surreptitiously" influence the judges of the Second Circuit by communicating with Ms. Williams.

For similar reasons, the board rejected the committee's finding that respondent did not violate Rule 3.5(d), which provides that a lawyer shall not engage in conduct intended to disrupt a tribunal, because she did not intend to cause any disruption. Instead, the board reasoned that "by improperly funneling confidential court documents to Ms. Williams and assisting her with the preparation of her case,

11

Respondent's conduct was clearly intended to influence the case before the Second Circuit panel" and found such conduct "can be described as intentionally disruptive conduct, aimed at improperly affecting the outcome of the case."

We find respondent did not violate any of the charged provisions of Rule 3.5. The crux of respondent's misconduct involves improper ex parte communication with a litigant; however, we agree with the board that the facts of this case fall outside of the parameters of prohibited ex parte communication under Rule 3.5(b). At the same time, we question the board's finding that respondent's actions were intended to "surreptitiously" influence the judges for purposes of Rule 3.5(a). As the committee found, there was no evidence respondent's actions were intended to directly influence the Second Circuit, although they may have indirectly assisted Ms. Williams in influencing the court towards her position. We also have difficulty finding respondent's actions were intended to disrupt the tribunal under Rule 3.5(d). Although her actions ultimately resulted in considerable disruption, there is no evidence suggesting she intended such a result.

The ODC also alleged respondent violated subsections (a), (b), (c), (d) and (e) of Rule 8.4, which provides:

> It is professional misconduct for a lawyer to:
>
> (a) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
>
> (b) Commit a criminal act especially one that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
>
> (c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
>
> (d) Engage in conduct that is prejudicial to the administration of justice;
>
> (e) State or imply an ability to influence improperly a judge, judicial officer, governmental agency or official or

to achieve results by means that violate the Rules of Professional Conduct or other law.

The hearing committee found respondent violated Rules 8.4(a), 8.4(b), 8.4(c), and 8.4(d), but did not violate Rule 8.4(e). The board agreed with these findings.

We agree these rule violations are supported by the record. Respondent clearly committed a criminal act which reflected on her honesty, as shown by her plea to an offense against intellectual property under La. R.S. 14:73.2. These facts clearly establish a violation of Rules 8.4(a), (b) and (c). Additionally, respondent's conduct was prejudicial to the administration of justice under Rule 8.4(d) even if she did not intend such a result. We also agree that no violation of Rule 8.4(e) was established because there was no evidence respondent implied she had any ability to influence the judges of the court.

In summary, we will dismiss the charged violations of Rule 3.5. However, we find the ODC established the charged violations of Rule 8.4 by clear and convincing evidence.

*Sanction*

Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis*, 513 So. 2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington*, 459 So. 2d 520 (La. 1984).

13

Respondent intentionally violated duties owed to the public, the legal system, and the legal profession, causing actual harm. It is obvious respondent intended to give Ms. Williams an advantage in the *Succession of Houston* litigation. Moreover, respondent's actions caused significant disruption in the litigation, resulting in the transfer of the case to another circuit. The applicable baseline sanction is disbarment. In mitigation, we find respondent has no prior disciplinary record. We find the following aggravating factors are supported by the record: a dishonest or selfish motive, substantial experience in the practice of law, and illegal conduct. These factors indicate there is no ground to deviate from the baseline sanction of disbarment. However, we do not find sufficient evidence in the record to show that respondent has a fundamental lack of moral character and fitness which would warrant her permanent exclusion from the profession.

Therefore, we find the board's recommendation of permanent disbarment is not appropriate, and we will instead impose ordinary disbarment. In doing so, we caution respondent that we will scrutinize any application for readmission with a careful eye to determine if she has taken genuine steps to reform her conduct.

**DECREE**

Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Trina Trinhthi Chu, Louisiana Bar Roll number 28531, be and she hereby is disbarred, retroactive to October 7, 2020, the date of her interim suspension. Her name shall be stricken from the roll of attorneys and her license to practice law in the State of Louisiana shall be revoked. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

# SUPREME COURT OF LOUISIANA

# No. 2024-B-0479

# IN RE: TRINA TRINHTHI CHU

# ATTORNEY DISCIPLINARY PROCEEDING

**WEIMER, C.J.,** concurs in part, dissents in part

While in no way minimizing the egregious mistakes made by the respondent while employed by the court of appeal, I would point out that Ms. Chu is not defined solely by those mistakes, but also by a life time of achievement and a sincere commitment to helping others. She has provided legal services on a pro bono basis and on a low fee basis to those less fortunate and has also worked as an interpreter. Those who spoke on her behalf, and whose testimony the Hearing Committee found credible, recounted her "big heart," citing her work with indigent clients and immigrants, her honesty, and her compassion.

Respondent faced the dilemma often encountered by those in disciplinary proceedings: how to apologize and accept responsibility for her conduct and at the same time offer an explanation for the events that unfolded in the hope of receiving leniency in the sanction. As the evidence adduced before the Hearing Committee reveals, after a 14 month long investigation into the criminal complaint lodged against respondent, the investigation was administratively closed in June 2019, only to be reopened after respondent filed to run for judge. As the Hearing Committee acknowledged, "had Respondent not filed to run for Judge after her termination, the criminal matter would have likely faded away quietly. But for the further investigation of the criminal matter, some of the presented evidence may not have developed in the disciplinary matter as it did." While the Committee noted there was a political component to respondent's prosecution, it did not consider this a mitigating factor. But it is a fact that supplies context to this matter.

Ultimately, the Hearing Committee recommended that respondent be disbarred. A majority of the Disciplinary Board recommended that she be permanently disbarred, with two board members dissenting and recommending ordinary disbarment. Following review of the record, the majority in this court has determined that respondent did not violate any of the charged provisions of Rule 3.5 (a determination with which I agree), but it appears that the recommendations of ordinary disbarment by the Hearing Committee and permanent disbarment by the Disciplinary Board were at least partially influenced by the erroneous findings of a Rule 3.5 violation. Yet, the majority here still imposes ordinary disbarment.

Respondent has been on interim suspension since October 7, 2020, or for more than four years. Based on the facts and circumstances of this case, I believe that is a sufficient sanction. This sanction would still require her to reapply for her license to practice law and if re-admitted, she could return to aiding the less fortunate as she had done before. I would not impose the sanction of disbarment, and respectfully dissent from the majority's decision to do so.